12 OCT 17 PM 2:09

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA., and
AMERICAN HOME ASSURANCE
COMPANY,

       **Plaintiffs,**

    v.

PAPA JOHN'S INTERNATIONAL, INC.,
and PAPA JOHN'S USA, Inc.,

       **Defendants.**

Civil Action File No.:

3:12-cv-677-S

## COMPLAINT FOR DECLARATORY RELIEF

COME NOW Plaintiffs National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") and American Home Assurance Company ("American Home") and file this Complaint for Declaratory Relief, alleging and averring as follows:

## INTRODUCTION

1. This is an action for Declaratory Judgment pursuant to 28 U.S.C. § 2201 to determine and resolve questions of actual controversy involving policies of Commercial General Liability insurance issued to Papa John's International, Inc. by National Union and American Home. Papa John's USA, Inc. is a Named

Insured under three of the National Union policies issued to Papa John's International, Inc. at issue herein, as more fully alleged below.

2. National Union and American Home seek a declaration that they have no duty to defend, indemnify or otherwise pay Papa John's International, Inc. or Papa John's USA, Inc. in any form, in connection with lawsuits filed and currently pending in:

a) the United States District Court for the Western District of Washington, Seattle Division, styled *Maria Agne, Erin Chutich, and Jerrod Chutich, on their own behalf and on behalf of other similarly situated persons v. Papa John's International, Inc., a Delaware corporation, et al.,* Civil Action File No. 2:10-cv-1139-JCC ("*Agne* Action"). A copy of the plaintiff's Fifth Amended Complaint in the *Agne* Action is attached hereto as Exhibit "A."; and

b) the United States District Court for the Eastern District of Virginia, Norfolk Division, styled *Eileen J. Downing, for herself and on behalf of all similarly situated individuals v. Papa John's USA, Inc. and Papa John's International, Inc.,* Civil Action File No. 2:12-cv-422 ("*Downing* Action"). A copy of the plaintiff's Complaint in the *Downing* Action is attached hereto as Exhibit "B."

2

## THE PARTIES

3.     National Union is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in New York, New York.

4.     American Home is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York.

5.     Upon information and belief, Papa John's International, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Louisville, Kentucky.

6.     Upon information and belief, Papa John's USA, Inc. is a corporation organized and existing under the laws of the State of Kentucky with its principal place of business in Louisville, Kentucky.

## JURISDICTION AND VENUE

7.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties, and the matter in controversy, exclusive of interest, attorneys' fees and costs, exceeds Seventy-Five Thousand Dollars ($75,000).  The Court further has jurisdiction under 28 U.S.C § 2201 because National Union and American Home are seeking a

3

declaration from this Court regarding the parties' rights and obligations with respect to policies of commercial general liability insurance issued to Papa John's International, Inc..

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because this action seeks the application of policies of insurance issued in the State of Kentucky to Papa John's International, Inc.

## THE AMERICAN HOME COMMERCIAL GENERAL LIABILITY INSURANCE POLICIES

9.     American Home issued policies of Commercial General Liability insurance to Papa John's International, Inc. bearing policy no. GL 575-91-63, effective October 1, 2006 to October 1, 2007 (the "06-07 American Home policy") and policy no. GL 159-55-07 effective October 1, 2007 to October 1, 2008 (the 07-08 American Home policy") (collectively referred to as the "American Home Policies").   Particular provisions of the policies are more fully addressed hereinafter.

## THE NATIONAL UNION COMMERCIAL GENERAL LIABILITY INSURANCE POLICIES

10.     National Union issued policies of Commercial General Liability insurance to Papa John's International, Inc. bearing policy no. GL 187-20-12, effective October 1, 2008 to October 1, 2009 (the "08-09 National Union policy"),

policy no. GL 093-96-64, effective October 1, 2009 to October 1, 2010 (the "09-10 National Union policy"), policy no. GL 436-09-13, effective October 1, 2010 to October 1, 2011 (the "10-11 National Union policy"), and policy no. GL 244-96-64, effective October 1, 2011 to October 1, 2012 (the "11-12 National Union policy"), (collectively referred to as the "National Union Policies"). Papa John's USA, Inc. is a Named Insured under the 09-10, 10-11, and 11-12 National Union Policies. Particular provisions of the policies are more fully addressed hereinafter.

### FACTS ALLEGED IN THE *AGNE* ACTION

11.   The *Agne* Action was originally filed on June 16, 2010 in the Superior Court of Washington for King County, and subsequently removed to the federal district court. The *Agne* action is currently pending against Defendants Papa John's USA, Inc. and Papa John's International, Inc. (hereinafter collectively referred to as "Papa John's"), together with several of its franchisees, individual franchise owners/operators, and a company, OnTime4U, in the business of using an automated telephone dialing system ("ATDS") for purposes of telephone marketing.

12.   The *Agne* Action alleges that the plaintiff Maria Agne received on her cellular telephone unsolicited telephone calls, visual messages and text messages in April 2010 without her prior, express consent. It is alleged that:

These text messages occupied a significant amount of the limited storage capacity of [Plaintiff's] cellular telephone. [Plaintiff] incurred monetary charges to receive these text messages. These text messages invaded the privacy of [Plaintiff], annoyed her, and constituted harassment. These text messages required her attention and wasted her time. The other recipients of such text messages incurred the same or substantively similar injuries and damages as [Plaintiff].

13.    It is further alleged in the *Agne* Action that in October, 2009, Papa John's began using an ATDS "to send prerecorded, unsolicited text messages to cellular telephone numbers which [Defendants] provided to OnTime4U." These text messages "were designed to induce consumers to order Papa John's branded products, goods, and services through telephone conversation." Specifically, Plaintiff alleges that in "about November 2009, OnTime4U sent at least 30,000 unsolicited text messages," and that in "about April 2010, OnTime4U sent at least 35,000 unsolicited text messages." Plaintiff alleges that City Pizza "provided OnTime4U with lists of telephone numbers to which OnTime4U sent the unsolicited messages." Additionally, it is alleged that between "October 2009 through at least April 2010" that PJ's Corporate and many of its affiliates engaged OnTime4U for a number of promotional campaigns in which OnTime4U sent no less than 5,000 unsolicited text messages to cellular telephone numbers provided by Papa John's and its affiliates.

14. The *Agne* Action alleges that Papa John's "was made aware of OnTime4U's use of its ATDS to send unsolicited text messages to market Papa John's branded products," and that Papa John's "approved of the sending of all such messages and otherwise directed that these messages be sent." It is specifically alleged that the Chairman of the Board of Directors and CEO of Papa John's and the vice president of marketing for Papa John's "ratified the use of OnTime4U's services to market the Papa John's brands . . . and conspired to direct and otherwise encourage affiliates and employees of PJ's Corporate throughout the United States to use OnTime4U's services . . . to send unsolicited text messages to market Papa John's branded products, goods, and services." It is further alleged that Papa John's "utilized a computer program created, owned, and maintained by PJ's Corporate in order to provide OnTime4U with the cellular telephone numbers to which OnTime4U sent unsolicited text messages which marketed" Papa John's products.

15. It is alleged in the *Agne* Action that soon after OnTime4U began sending unsolicited text messages on behalf of Papa John's, Papa John's and/or its affiliates began receiving complaints from recipients of the messages. Despite the complaints, Papa John's allegedly continued to approve and direct that the unwanted messages be sent.

16. It is alleged in the *Agne* Action that Papa John's and a franchisee permitted OnTime4U to have direct access to their computer database which contained the cellular telephone numbers and other private information of Plaintiffs without advising Plaintiffs that (a) they were collecting and maintaining the information in a database, (b) that third-parties would have access to it, and (c) that it would be used to send Plaintiffs unsolicited commercial text messages.

17. It is alleged in the *Agne* Action that by April 2010, Papa John's knew that sending unsolicited commercial text messages was a violation of federal law based upon a memo sent by Papa John's to its franchisees and affiliates.

18. The *Agne* Plaintiffs seek certification of a national class of:

All persons in the United States of America who were sent, to their cellular telephone numbers, at least one unsolicited text message which marketed a Papa John's branded product, good, or service. . .

and certification of a "Washington subclass" comprised of:

All persons in Washington State who were sent, to their cellular telephone numbers, at least one unsolicited text messages [sic] which marketed a Papa John's branded product, good, or service . . . .

19. The *Agne* Plaintiffs allege: (1) Violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; (2) Violations of the Washington Consumer Protection Act ("WCPA"), including but not limited to R.C.W. 19.190.060 (prohibiting the transmission of unsolicited commercial text messages

8

to cellular telephone or pager numbers in Washington); and (3) Negligence (on the basis that Defendants breached duties of care to the Plaintiffs and permitted, suffered, required, ratified, directed, and/or otherwise proximately caused the acts and omissions that damaged the Plaintiffs; and that if Defendants "had not been negligent (or worse) in their supervision, management, direction, instruction, training, guidance, assistance, and/or control of each other, their agents, themselves, or other culpable persons, then the marketing practices referenced herein would have comported with all applicable law, OnTime4U and others would not have gained access to the Plaintiffs' private information, and/or none of the text messages referenced in this complaint would have been sent to the telephonic devices of Plaintiffs.").

## FACTS ALLEGED IN THE *DOWNING* ACTION

20.    The *Downing* Action is currently pending against Defendants Papa John's USA, Inc. and Papa John's International, Inc. (hereinafter collectively referred to as "Papa John's"). The *Downing* Complaint was filed on July 30, 2012 and alleges that the named Plaintiff, on behalf of herself and all similarly situated individuals, received unsolicited text messages on her cell phone advertising Papa John's products that were made using an autodialer, in violation of the Telephone Consumer Protection Act ("TCPA"). Plaintiff Downing alleges that this was "an

invasion of Plaintiff's privacy rights in this Commonwealth," and that these messages "actually cost[] their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or for a text plan that includes a specified number of messages, regardless of whether or not the message is authorized."

21.    It is further alleged that Downing received a total of 23 text messages to her cell phone between December 30, 2011 and June 8, 2012, inclusive, from the Papa John's Defendants and/or persons acting on their behalf, and that she received numerous additional text messages prior to December 30, 2011 that were deleted from her cell phone.  Each of these text messages was allegedly sent by an autodialer.

22.    Downing alleges that Defendants obtained her cell phone number "as a result of it having been captured when Plaintiff used her cell phone in placing a telephone order for pizza or another product from Defendants and/or a Papa John's franchisee," and that Defendants obtained her cell phone number "as a result of Downing being requested to provide [it] in connection with a telephone order of pizza or another product from Defendants and/or a Papa John's franchisee." Downing further alleges that "at no time did the person responsible for capturing Plaintiff's phone number or the person requesting Plaintiff's phone number,

request or receive Plaintiff's express consent that her cell phone number be called or that SMS or other text messages be sent to her cell phone number using an autodialer. Neither did such person inform Downing that autodialed calls would be made or that autodialed SMS or text messages would be sent to her cell phone number.

23.     The class of persons that Downing seeks to represent consists of:

All natural persons residing in the United States (a.) who received one or more SMS or text messages on their wireless phones (b.) sent by or on behalf of Defendants using the SMS short code 47272 or 4PAPA (c.) using an automatic telephone dialing system as defined by the TCPA (d.) within four years next preceding the filing of this action and during its pendency, (e.) where the wireless phone number called was obtained as a result of it being captured and/or requested in connection with a telephone order for pizza or another product from Defendants or a Papa John's franchisee. Excluded from the class definition are any employees, officers, directors of Defendant, and attorney appearing in this case, and any judge assigned to hear this action.

24.     The *Downing* Action alleges one claim for relief - violation of the TCPA based on autodialed calls to wireless numbers. The *Downing* Plaintiffs allege that each class member is entitled to recover $500 in statutory damages for each violation. The *Downing* Plaintiffs further allege that in the event the Defendants are found to have knowingly or willfully violated the TCPA, the Court may increase the amount of statutory damages to $1,500 for each violation. The *Downing* Plaintiffs also seek injunctive relief prohibiting Defendants' violations of

the TCPA in the future. The *Downing* Plaintiffs also assert a demand that Defendants preserve evidence relevant to the litigation. In the prayer for relief, the *Downing* Plaintiffs reassert the claim for statutory damages, trebled as appropriate, and a permanent injunction; as well as claims for pre-judgment interest, "a reasonable attorney's fee to be paid out of any common fund created by virtue of the litigation;" the costs of the proceeding; and "all general, special and equitable relief to which Plaintiff and the members of the Class are entitled by law."

**COUNT I**
**NO DUTY TO DEFEND OR INDEMNIFY**

**(No Allegation of Sums That The Insured May Be**
**Legally Obligated To Pay As "Damages")**

25.    American Home and National Union restate and re-allege Paragraphs 1 through 24 as though fully set forth herein.

26.    The American Home and National Union policies only apply to sums the insured is legally obligated to pay as "damages" because of "bodily injury,"[1] "property damage," or "personal and advertising injury."

27.    The *Agne* Action and the *Downing* Action seek statutory penalties recoverable under the TCPA, rather than actual damages. As such, the *Agne*

---

[1]    There is no present and actual controversy between the parties that the *Agne* Action and the *Downing* action do not allege "bodily injury" as that term is defined in the American Home and National Union policies.

Action and the *Downing* Action do not allege "damages" that the insured may be legally obligated to pay, because the statutory sums recoverable under the TCPA are penal in nature, and therefore do not constitute "damages" within the meaning of the American Home and National Union Commercial General Liability insurance policies. Alternatively, the *Agne* Action and the *Downing* Action do not allege "damages" that the insured may be legally obligated to pay because the statutory sums recoverable under the TCPA are a penalty in the nature of punitive damages, for which no coverage is available where it is violative of public policy to insure against an award of punitive damages. Accordingly, the Commercial General Liability Policies do not provide coverage for the damages alleged in the *Agne* Action or the *Downing* Action.

28.    American Home and National Union are informed and believe that Papa John's nonetheless contends that the *Agne* Action and the *Downing* Action allege "damages" that the insured may be legally obligated to pay. As such, an actual and present dispute exists between American Home and National Union and Papa John's as to whether the damages alleged in the *Agne* Action and the *Downing* Action are covered under the American Home and National Union Policies.

29. Inasmuch as an actual and present controversy currently exists between American Home and National Union and Papa John's concerning their respective rights and obligations under the Commercial General Liability Policies, American Home and National Union are entitled to a judicial determination of their rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## COUNT II
## NO DUTY TO DEFEND OR INDEMNIFY

### (No Allegation Of "Property Damage")

30. American Home and National Union restate and re-allege Paragraphs 1 through 29 as though fully set forth herein.

31. The American Home and National Union policies only apply to sums the insured is legally obligated to pay as "damages," in relevant part because of "property damage." The Policies define "property damage," in relevant part, as physical injury to tangible property or loss of use of tangible property that is not physically injured.

32. The *Agne* Action and the *Downing* Action do not allege "property damage" as that term is defined in the American Home and National Union Policies. Accordingly, the Commercial General Liability Policies do not provide coverage for the claims at issue in the *Agne* Action or the *Downing* Action.

14

33. American Home and National Union are informed and believe that Papa John's nonetheless contends that the *Agne* Action and the *Downing* Action allege claims for "property damage" as that term is defined in the Commercial General Liability Policies. As such, an actual and present dispute exists between American Home and National Union and Papa John's as to whether the claims alleged in the *Agne* Action and the *Downing* Action are covered under the American Home and National Union Policies.

34. Inasmuch as an actual and present controversy currently exists between American Home and National Union and Papa John's concerning their respective rights and obligations under the Commercial General Liability Policies, American Home and National Union are entitled to a judicial determination of their rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## COUNT III
## NO DUTY TO DEFEND OR INDEMNIFY

### (No Allegation Of An "Occurrence")

35. American Home and National Union restate and re-allege Paragraphs 1 through 34 as though fully set forth herein.

36. The American Home and National Union Commercial General Liability Policies only apply to sums that the insured becomes legally obligated to

pay as "damages," in relevant part, because of "property damage" which occurs during the policy period and is caused by an "occurrence." "Occurrence" is defined in the Policies in relevant part to mean "an accident."

37. The *Agne* Action and the *Downing* Action do not allege an "occurrence" as that term is defined in the American Home and National Union Policies. Accordingly, the Commercial General Liability Policies do not provide coverage for the claims at issue in the *Agne* Action or the *Downing* Action.

38. American Home and National Union are informed and believe that Papa John's nonetheless contends that the *Agne* Action and the *Downing* Action allege claims for property damage that was caused by an "occurrence" as that term is defined in the Commercial General Liability Policies. As such, an actual and present dispute exists between American Home and National Union and Papa John's as to whether the claims alleged in the *Agne* Action and the *Downing* Action are covered under the American Home and National Union Policies.

39. Inasmuch as an actual and present controversy currently exists between American Home and National Union and Papa John's concerning their respective rights and obligations under the Commercial General Liability Policies, American Home and National Union are entitled to a judicial determination of

16

their rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## COUNT IV
## NO DUTY TO DEFEND OR INDEMNIFY

**(No Allegation Of "Personal and Advertising Injury")**

40.    American Home and National Union restate and re-allege Paragraphs 1 through 39 as though fully set forth herein.

41.    The American Home and National Union Commercial General Liability Policies only apply to sums that the insured becomes legally obligated to pay as "damages," in relevant part, because of "'personal and advertising injury' caused by an offense arising out of [the Named Insured's] business but only if the offense was committed in the 'coverage territory' during the policy period." The Policies define "personal and advertising injury," in relevant part, to mean "oral or written publication, in any manner,[2] of material that violates a person's right of privacy."

42.    The *Agne* Action and the *Downing* Action do not allege a "personal and advertising injury" as that term is defined in the American Home and National

---

[2]    The phrase "in any manner" is not included in this particular prong of the definition of "personal and advertising injury" in the 06-07 American Home policy, but the phrase is included in the definition in all other policies.

Union Policies. Accordingly, the Commercial General Liability Policies do not provide coverage for the claims at issue in the *Agne* Action or the *Downing* Action.

43. American Home and National Union are informed and believe that Papa John's nonetheless contends that the *Agne* Action and the *Downing* Action allege claims for "personal and advertising injury" as that term is defined in the Commercial General Liability Policies. As such, an actual and present dispute exists between American Home and National Union and Papa John's as to whether the claims alleged in the *Agne* Action and the *Downing* Action are covered under the American Home and National Union Policies.

44. Inasmuch as an actual and present controversy currently exists between American Home and National Union and Papa John's concerning their respective rights and obligations under the Commercial General Liability Policies, American Home and National Union are entitled to a judicial determination of their rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## COUNT V
## NO DUTY TO DEFEND OR INDEMNIFY

**(Policy Exclusion For "Expected or Intended Injury" Precludes Coverage)**

45. American Home and National Union restate and re-allege Paragraphs 1 through 44 as though fully set forth herein.

18

46.     The American Home and National Union Commercial General Liability Policies do not apply to and exclude coverage for "Expected or Intended Injury," which is defined to mean, ". . . 'property damage' expected or intended from the standpoint of the insured . . . ."

47.     To the extent that the *Agne* Action and the *Downing* Action could be interpreted to allege "property damage," the *Agne* Action in particular further alleges that "[e]ach of the Defendants negligently, recklessly, willfully, and/or intentionally caused, initiated, contributed to, assisted with, combined together to, and/or agreed to accomplish the injurious and unlawful acts and omissions referenced in this complaint." (*Agne* Action, Exhibit A, par. 26).  Moreover, even if the *Agne* Action and the *Downing* Action could be interpreted to not allege that Papa John's expected or intended any "property damage," it is well-settled that sending an unsolicited message to a telephone is expected to result in injury to the recipient.  As a result, to the extent that Papa John's is allegedly liable to the plaintiffs in the *Agne* Action and the *Downing* Action for "property damage," the "Expected or Intended Injury" exclusion contained in the American Home and National Union Policies applies, and these policies do not provide coverage for the claims at issue in the *Agne* Action or the *Downing* Action.

48. American Home and National Union are informed and believe that Papa John's nonetheless contends that the subject exclusion does not apply and that coverage is afforded by the Commercial General Liability Policies. As such, an actual and present dispute exists between American Home and National Union and Papa John's as to whether the claims alleged in the *Agne* Action and the *Downing* Action are covered under the American Home and National Union Policies.

49. Inasmuch as an actual and present controversy currently exists between American Home and National Union and Papa John's concerning their respective rights and obligations under the Commercial General Liability Policies, American Home and National Union are entitled to a judicial determination of their rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## COUNT VI
## NO DUTY TO DEFEND OR INDEMNIFY

### (Policy Exclusion For "Knowing Violation Of Rights Of Another" Precludes Coverage)

50. American Home and National Union restate and re-allege Paragraphs 1 through 49 as though fully set forth herein.

51. The American Home and National Union Commercial General Liability Policies do not apply to and exclude coverage for "Knowing Violation of Rights of Another," which is defined to mean, "'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

52. To the extent that the *Agne* Action and the *Downing* Action could be interpreted to allege "personal and advertising injury," the *Agne* Action in particular further alleges that in April 2010, Papa John's sent a memorandum stating that it had "concluded that the practice and process of sending UNSOLICITED messages to mobile devices is most likely ILLEGAL and poses a potentially serious risk of liability and tarnishment of the image and goodwill of the Papa John's brand." (*Agne* Action, Exhibit A., par. 43). As a result, to the extent that Papa John's is allegedly liable to the plaintiffs in the *Agne* Action and the *Downing* Action because Papa John's knew that its alleged conduct of sending unsolicited text messages to the plaintiffs' cell phone numbers violated the plaintiffs' rights and would inflict "personal and advertising injury," the "Knowing Violation of Rights of Another" exclusion contained in the Commercial General Liability Policies applies, and these policies do not provide coverage for the claims at issue in the *Agne* Action or the *Downing* Action.

53.   American Home and National Union are informed and believe that Papa John's nonetheless contends that the subject exclusion does not apply and that coverage is afforded by the Commercial General Liability Policies.  As such, an actual and present dispute exists between American Home and National Union and Papa John's as to whether the claims alleged in the *Agne* Action and the *Downing* Action are covered under the American Home and National Union Policies.

54.   Inasmuch as an actual and present controversy currently exists between American Home and National Union and Papa John's concerning their respective rights and obligations under the Commercial General Liability Policies, American Home and National Union are entitled to a judicial determination of their rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## COUNT VII
## NO DUTY TO DEFEND OR INDEMNIFY

**(Policy Exclusion For "Material Published Prior
To Policy Period" Precludes Coverage)**

55.   American Home and National Union restate and re-allege Paragraphs 1 through 54 as though fully set forth herein.

56.    The American Home and National Union Commercial General Liability Policies do not apply to and exclude coverage for "Material Published Prior To Policy Period," which is defined to mean, "'Personal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.'"

57.    To the extent that the *Agne* Action and the *Downing* Action could be interpreted to allege "personal and advertising injury," the *Agne* Action and the *Downing* Action further allege that Papa John's sent or directed to be sent unsolicited text messages advertising Papa John's goods, services or products to the plaintiffs' cell phones on specific dates identified in the respective complaints, and during the four-year time period immediately preceding the filing of each complaint.    In particular, the *Downing* Action alleges that "[o]n numerous occasions over the past four years . . . Defendants and/or persons acting on their behalf sent SMS or text messages identical to those received by Plaintiff to thousands of other wireless phone numbers . . . . " (*Downing* Action, Exhibit B, pars. 24, 32).    As a result, to the extent that Papa John's is allegedly liable to the plaintiffs in the *Agne* Action and the *Downing* Action because of "material whose first publication took place before the beginning of [a particular] policy period," the exclusion contained in the 07-08 American Home policy and the National

Union Policies applies, and these policies do not provide coverage for the claims at issue in the *Agne* Action or the *Downing* Action.

58.    American Home and National Union are informed and believe that Papa John's nonetheless contends that the subject exclusion does not apply and that coverage is afforded by the Commercial General Liability Policies. As such, an actual and present dispute exists between American Home and National Union and Papa John's as to whether the claims alleged in the *Agne* Action and the *Downing* Action are covered under the 07-08 American Home policy and the National Union Policies.

59.    Inasmuch as an actual and present controversy currently exists between American Home and National Union and Papa John's concerning their respective rights and obligations under the Commercial General Liability Policies, American Home and National Union are entitled to a judicial determination of their rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## COUNT VIII
## NO DUTY TO DEFEND OR INDEMNIFY

**(Policy Exclusion For "Violation of Statutes" Precludes Coverage)**

60.    American Home and National Union restate and re-allege Paragraphs 1 through 59 as though fully set forth herein.