UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

(*ELECTRONICALLY FILED*)

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and AMERICAN HOME ASSURANCE COMPANY | PLAINTIFFS |
| v. | Civil Action No. 3:12CV-677-S |
| PAPA JOHN'S INTERNATIONAL, INC. and PAPA JOHN'S USA, INC. | DEFENDANTS |

** ** ** ** ** **

**MEMORANDUM OF DEFENDANTS PAPA JOHN'S INTERNATIONAL, INC.
AND PAPA JOHN'S USA, INC. IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PAPA JOHN'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendants Papa John's International, Inc. and Papa John's USA, Inc. (collectively, "Papa John's") respectfully submit this memorandum in opposition to the motion of Plaintiffs' First Insurance Company of Pittsburgh, PA and American Home Assurance Company (collectively, "Plaintiffs") for summary judgment (the "Motion") and in support of Papa John's Cross-Motion for Summary Judgment.

## INTRODUCTION

Plaintiffs seek a declaration that no coverage exists for Papa John's under the applicable insurance policies (the "Policies") for claims alleged in two class complaints filed in Washington and Virginia federal district courts (the "Underlying Actions"). In particular, Plaintiffs ask this Court to find that there is no coverage available to Papa John's for claims that it transmitted unsolicited text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), and state law. While neither Kentucky nor the Sixth Circuit has squarely addressed the issues presented in Plaintiffs' motion, Kentucky's jurisprudence on insurance

contract interpretation, and numerous decisions from courts across the country, in fact make clear that Papa John's *is* entitled to coverage as a matter of law in light of the allegations made in the Underlying Actions.  Not only do the allegations in the Underlying Actions trigger coverage because the Class Plaintiffs' alleged "loss of use" of their cellular phones from texting amounts to "property damage" caused by an "occurrence" as defined in the Policies, the transmission of purported "unwanted texts" likewise constitutes "personal and advertising injury" under the Policies.

Moreover, Plaintiffs cannot escape their coverage obligations by reliance on the Policies' exclusion for "Violations of Statutes in Connection with Sending, Transmitting or Communicating any Material or Information" (the "Statutory Claim Exclusion").  The Statutory Claim Exclusion is written so broadly so as to render the coverage provided by the Policies illusory and is otherwise unenforceable under Kentucky law and public policy.  In addition, the Statutory Claim Exclusion is both ambiguous and self-contradictory when read in conjunction with the other provisions of the Policies, making coverage a nullity.

As discussed more fully below and in Papa John's Reply Brief in support of its previously pending Motion to Stay,[1] Papa John's is entitled to judgment as a matter of law.  In the alternative, if the Court determines that the Policies are ambiguous on their face or as applied, Papa John's requests that the Court stay these proceedings pending resolution of the Underlying Actions.

---

[1] As explained in Papa John's Reply Brief in support of its Motion to Stay, Papa John's initially moved this Court to stay the litigation pending resolution of certain factual questions presented in the Underlying Actions.  Based on research and analysis conducted in response to Plaintiffs' Motion for Summary Judgment, however, Papa John's now believes it is entitled to judgment as a matter of law, as discussed below.  If the Court disagrees with that conclusion, however, and finds that genuine issues of material fact exist based on ambiguities in the Policies or allegations in the Underlying Actions, then Papa John's initial arguments in support of staying the litigation remain valid.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### I.   THE UNDERLYING ACTIONS

The first class action, *Agne et al. v. Rain City Pizza, LLC et al.* ("*Agne*"), was removed to

the United States District Court for the Western District of Washington on July 14, 2010.  Since

that time, class plaintiffs have filed their Fifth Amended Complaint, alleging that Papa John's

and various franchisees are responsible for unsolicited text messages sent by the franchisees or

those hired by the franchisees as part of their local marketing campaigns.[3]  There is no allegation

that Papa John's itself sent any of the unsolicited text messages.  The second action, *Eileen J.*

*Downing for herself and on behalf of all similarly situated individuals v. Papa John's*

*International, Inc. et al.*, No. 2:12cv422 ("*Downing*"), was originally filed as a putative class

action in the United States District Court for the Eastern District of Virginia on July 30, 2012,

but all class action claims were subsequently dismissed by the plaintiff.[4]  Papa John's moved for

summary judgment and is awaiting a decision on its motion.

In 2010 and again in 2012, Papa John's gave notice of the Underlying Actions to

Plaintiffs.  Plaintiffs advised Papa John's that they would not provide coverage in connection

with either lawsuit.  On October 17, 2012, the Plaintiffs filed their Complaint for declaratory

relief from this Court arguing, *inter alia*, that Plaintiffs "have no duty to defend or indemnify

[Papa John's] for the claims alleged in the *Agne* or *Downing* Action  . . . ."  Papa John's filed a

---

[2] In their brief in support of their Motion, Plaintiffs include a "Statement of Undisputed Material Facts" (the "Statement").  Motion at 5-9.  As discussed more fully below, Papa John's directly disputes numerous material facts listed in Plaintiffs' Statement.  Though every fact raised in the Statement may not be directly addressed for purposes of this brief, Papa John's does not concede, and reserves all rights to dispute, any fact listed therein.

[3] The *Agne* action was stayed by Court Order pending appeal of the Court's class certification order to the Ninth Circuit Court of Appeals.  *See* Order Staying Case, *Agne et al. v. Rain City Pizza LLC, et al.*, Case No. 2:10-cv-01139-JCC (W.D. Wash. Dec. 11, 2012) [Dkt. No. 370]. More recently, the parties appear to have reached an agreement in principle to settle the matter, but no settlement has been finalized or submitted to the Court for approval.

[4] In an Order dated December 31, 2012, Plaintiff dismissed all class claims without prejudice and is pursuing only her individual claims.  Thus, the *Downing* action is no longer a class action.  *See* Memorandum in Support of Motion for Order Permitting Withdrawal of Counsel, *Downing v. Papa John's USA, Inc., et al.*, No. 2:12cv422 (E.D. Va. Jan. 8, 2013) [Dkt. No. 22].

motion to stay litigation ("Motion to Stay") on December 21, 2012, and argued that (1) the issues raised in the Complaint are not ripe for declaratory relief, and (2) a stay of this litigation would not prejudice Plaintiffs, but proceeding with the declaratory action at this time could prejudice Plaintiffs' insured, Papa John's.  Plaintiffs responded to the Motion to Stay with not only a response in opposition, but also the instant motion for summary judgment.  Plaintiffs argue that summary judgment should be granted because the *Agne* and *Downing* actions do not assert covered claims.

### A.  The Alleged Facts And Claims Asserted In The *Agne* Action

The *Agne* Plaintiffs assert that Papa John's and the franchisee defendants "joined together to market and advertise Papa John's branded products, goods, and services to consumers through telephonic devices."  Exhibit A to Plaintiffs' Complaint at ¶ 22.  The *Agne* Complaint claims that Defendant OnTime4U, a marketing company, under the direction of Papa John's and the Defendant franchisees, sent "uninvited and unsolicited" text messages that, among other things caused [class] Plaintiffs to lose limited storage capacity on their cellular telephones and invaded the privacy of [class] Plaintiffs.  *Id.* at ¶ 37(i), (k).  *Agne* has not alleged that Papa John's, defendants in this action, actually sent the offending text messages or contracted with other defendants to send the violative messages.  *See id.* at ¶ 32(a-b) ("ONTIME4U sent at least 35,000 unsolicited text messages . . .").  The Complaint does allege, however, that "[e]ach of the Defendants negligently, recklessly, willfully, and/or intentionally caused  . . . the injurious and unlawful acts and omissions."  *Id.* at ¶ 26.  In the Fifth Amended Complaint, class Plaintiffs bring counts for alleged violations of the TCPA, violations of the Washington Consumer Protection Act, and negligence (the "Negligence Count").  *Id.* at ¶¶ 58-77.  The Negligence Count states that "defendants breached duties of care, including the duty of ordinary care, to Plaintiffs." *Id.* at ¶ 75.  Not only are the *Agne* allegations just that—allegations that still remain

to be proved—Papa John's expressly disputes the characterization of its role in the violations of the TCPA and Washington Consumer Protection Act, as well as the claims of its negligence.

### B.  The Alleged Facts And Claims Asserted In The *Downing* Action

The *Downing* action, which is no longer styled as a class action, claims that Papa John's ("and/or persons acting on their behalf") violated the TCPA by sending "numerous SMS or text messages to Plaintiff's cell phone number."  Exhibit B to Plaintiff's Complaint at ¶¶  24, 45.  The action also claims that the text messages allegedly sent by or on the behalf of Papa John's were to the exclusion of text messages authorized under the plaintiff's cellular contract.  *Id.* at ¶ 22 ("[C]ell phone users must frequently pay their respective wireless service providers for each text message call they receive or for a text plan that includes a specified number of messages, regardless of whether or not the message is authorized.").  The veracity of the *Downing* allegations is still being tested, and Papa John's alleged role in the underlying TCPA violations has been expressly contested by Papa John's.  Papa John's denied the *Downing* plaintiff's characterization of the "facts," and all such allegations remain in dispute.

## II.    THE APPLICABLE INSURANCE POLICY PROVISIONS

Plaintiffs admit (as they must) that the Policies issued by Plaintiffs apply to the Underlying Actions, but they deny that any coverage is available to Papa John's pursuant to three separate provisions: the "Property Damage" provision, the "Advertising Injury" provision and the Statutory Claim Exclusion.  Motion at 5-6.  The "Property Damage" provision provides that Plaintiffs will "pay on behalf of [Papa John's] those sums in excess of the 'Retained Limit' that [Papa John's] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The insurance applies to "property damage" that is caused by an "occurrence" that takes place in the coverage territory.  "Occurrence" is defined in the Policies as "an accident, including continuous or repeated exposure to

substantially the same general harmful conditions." "Property damage" is defined, in part, as "[l]oss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

The "Advertising Injury" provision provides that Plaintiffs will "pay on behalf of [Papa John's] those sums in excess of the 'Retained Limit' that [Papa John's] becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."  "Personal and advertising injury" is defined in the Policies, in relevant part, as an "injury" arising out the "[o]ral or written publication, in any manner, of material that violates a person's right of privacy."

The third provision, the Statutory Claim Exclusion, provides in pertinent part, as follows:

> This insurance does not apply to **any** loss, injury, damage, claim, suit, cost or expense arising out of or resulting from, caused **directly or indirectly**, **in whole or in part** by, **any** act that violates **any** statute, ordinance or regulation of **any federal, state or local government**, including **any** amendment of or addition to such laws, that includes[5], addresses or applies to the sending, transmitting or communicating of **any** material or information, by **any means whatsoever**.
>
> To the extent any coverage may otherwise be available under this Policy, the provisions of this Exclusion shall supersede the same and exclude such coverage.
>
> All other terms and conditions of the policy are the same.

As discussed more fully below, Papa John's is entitled to coverage under both the "Property Damage" and "Advertising Injury" provisions of the Polices.  In addition, the Statutory Claim Exclusion cannot serve as a bar to coverage because, when interpreted under Kentucky law, such Exclusion renders coverage illusory and violative of public policy because it would exclude most if not all state and federal statutory claims regardless of whether Papa

---

[5] The word "includes" is not in the Exclusion for the American Assurance Policies, but the Exclusion is in all other respects identical. *See also* Motion at 9.

John's or its agent violated any such statutes or was even accused of doing same.  As such, the Statutory Claim Exclusion, if applied, would leave Plaintiffs with no duty to perform under the Policies.  Accordingly, the Statutory Claim Exclusion is unenforceable under Kentucky law and should be severed from the Policies, and any determination of coverage based on the Policies' coverage provisions without reference to the Statutory Claim Exclusion.

## ARGUMENT

### I.   CONSTRUCTION AND INTERPRETATION OF THE POLICIES UNDER KENTUCKY LAW FAVOR PAPA JOHNS.

This Court, sitting in diversity, must apply Kentucky's substantive law to interpret the Policies.  *Secura Ins. Co. v. Gray Constr., Inc.*, 717 F. Supp. 2d 710, 714 (W.D. Ky. 2010); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  On this point, Plaintiffs agree.  Motion at 10-11.  However, Plaintiffs offer mere lip-service to Kentucky's well-defined rules of insurance contract interpretation.  Ignoring Kentucky law and citing authority exclusively from outside jurisdictions, Plaintiffs purport to rely upon the "plain reading" of the Policies, but fail to note the glaring ambiguities and contradictions created by the Statutory Claim Exclusion.  As discussed more fully below, Kentucky's rules for interpreting insurance policies dictate that Plaintiffs do in fact have an obligation to provide Papa John's coverage for the Underlying Actions.

#### A.  Under Kentucky Law, The Policies Must Be Construed Liberally In Papa John's Favor.

Generally, construction of an insurance contract is a matter of law.  *Sheffey v. Am. Gen. Life & Accident Ins. Co.*, No. 10-10-DLB-JGW, 2011 U.S. Dist. LEXIS 122582, *6 (E.D. Ky. Oct. 24, 2011).  If, however, there is more than one reasonable interpretation, or the policy is ambiguous, the meaning of the insurance policy is to be determined by the trier of fact.  *See, e.g., Distad v. Aetna Cas. & Sur. Co.*, 67 S.W.2d 24, 26 (Ky. 1934); *Equitania Ins. Co. v. Slone &*

*Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006) ("Certainly, if the writing is ambiguous, the factual question of what the parties intended is for the jury to decide").

It is also well-settled in Kentucky jurisprudence that insurance policies are to be construed liberally in favor of the insured. *E.g.*, *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994). Exclusions should be narrowly construed and any doubts as to coverage are resolved in the insured's favor. *Id.* Ambiguities are interpreted in favor of the insured because insurance policies are contracts of adhesion with little to no opportunity for the insured to bargain for different coverage.

Kentucky law is likewise clear that an ambiguous insurance policy must be construed to "resolve any doubts in favor of the insured." *Wolford v. Wolford*, 662 S.W.2d 835, 838 (Ky. 1984). And since the Policy is drafted by the insurance carrier, the carrier "must be held strictly accountable for the language used." *Eyler v Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 860 (Ky. 1992). If the Court determines that a policy is ambiguous on its face or as applied, the determination of coverage is left to the fact-finder, and cannot be decided on a motion for summary judgment. *Newton v. N. Am. Specialty Ins. Co.*, No. 08-522-JBC, 2010 U.S. Dist. LEXIS 101137, *10 (E.D. Ky. Sept. 23, 2010) (If "there are two plausible interpretations, the court must deny summary judgment.").

## B.  The Doctrine Of Reasonable Expectations Supports Coverage For Papa John's.

To determine whether a policy is ambiguous, *i.e.*, susceptible to two or more reasonable interpretations, Kentucky courts apply the "doctrine of reasonable expectations." *Bidwell v. Shelter Mut. Ins. Co.*, 367 S.W.3d 585, 589 (Ky. 2012). Under the reasonable expectations doctrine, the insured is entitled to all coverage it could reasonably have expected under the policy in question in light of what they actually paid for. *True v. Raines*, 99 S.W.3d 439, 443

(Ky. 2003). The doctrine "is based on the premise that policy language will be construed as laymen would understand it." *Id.* (citation omitted). Only an "unequivocally conspicuous plain and clear manifestation" of the insurance company's intent to exclude coverage can defeat that expectation. *Kentucky Ass'n of Cntys. v. McClendon,* 157 S.W.3d 626, 634 (Ky. 2005). Thus, "[u]nder the doctrine of reasonable expectations, it has been held that it cannot be accepted as a fact that the parties in good faith intended to bargain for insurance that paid no benefits." *James Graham Brown Found., Inc., v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991).

### C.  When The Allegations In A Complaint Allow For Even The Possibility Of Coverage, An Insurer's Duty To Indemnify Exists.

To determine whether a policy provides coverage for an insured in a lawsuit, one must look to the allegations of the complaints. If anything alleged in a complaint could possibly be covered under a policy, then the insurer must indemnify the insured, regardless of whether a claim that is not covered is also alleged. *See id.* (citing *O'Bannon v. Aetna Cas. & Sur. Co.*, 678 S.W.2d 390 (Ky. 1984). The insurer "must defend any suit in which the language of the complaint would bring it within policy coverage regardless of the merit of the action." *Wolford*, 662 S.W.2d at 838. As discussed more fully below, Papa John's has a right to coverage under the Policies until facts are established in the Underlying Actions that demonstrate no possibility of coverage.

## II.  THE POLICIES PROVIDE COVERAGE TO PAPA JOHN'S IN THE UNDERLYING ACTIONS.

### A.  The Underlying Actions Allege "Property Damage" Caused By An "Occurrence."

As noted previously, the Policies define "Property Damage" as "[p]hysical injury to tangible property including all resulting loss of use of that property . . . or [l]oss of use of

tangible property that is not physically injured."  "Occurrence" is defined as "an accident, including continuous repeated exposure to substantially the same general harmful conditions."

Plaintiffs improperly base their argument that there was no "Property Damage" solely on the fact that the Plaintiffs in the *Agne* and *Downing* made "no allegation that any cellular telephone was physically damaged." Motion at 14.  That argument ignores the fact that both the *Agne* and *Downing* plaintiffs alleged "loss of use" of their cellular devices, which is expressly included in the Policies' definition of "Property Damage."  In particular, both the *Agne* and *Downing* plaintiffs alleged loss of use when they claimed, respectively, that the text messages "occupied a significant amount of the limited storage capacity of their cellular telephones" and that they received the text messages even though they had purchased text messaging plans that "includes a specified number of messages."  Exhibit A to Plaintiff's Complaint, at ¶ 5; Exhibit B to Plaintiff's Complaint, at ¶ 22.  Indeed, loss of storage space clearly affects one's use of his cellular telephone; one cannot use a phone's storage space if it has been diminished because of text messages received.  Plaintiffs have no answer to these facts so they simply ignore them.

In addition, even the authority Plaintiffs rely upon demonstrates that their position is not well taken.  In *Collective Brands, Inc. v. Nat'l Union Fire Ins. Co.*, No. 11-4097-JTM, 2013 U.S. Dist. LEXIS 1338, *35-36  (D. Kan. Jan. 4, 2013), for example, the Kansas District Court squarely rejected National Union's attempt to read "loss of use" out of the policy in the context of unwanted telephone calls and text messages:

> National Union suggests that no loss of use occurred here, because the communications here were telephone calls and text messages, rather than faxes.  The court finds the distinction is not so decisive as to preclude the duty to defend.  Congress noted in passing the TCPA that an automated telephone connection can effective (sic) seize a telephone line, releasing it only after the recipient hangs up or the message is played. H.R. Rep. No. 102-317 (1991).  Further, the text message function on many older cell phones require the

10

user to manually respond or delete them before otherwise using the phone. *Id.* at 36.

The Court concluded that insurer had a duty to defend, even if it was possible that all recipients of the text messages owned newer smart phones that allow continued use during the receipt of a text message. *Id.*

The majority of federal courts to have addressed the issue have consistently found that the consequence of unwanted messages, regardless of form, constitutes the "loss of use" of tangible property within the meaning of "property damage." *See, e.g., Park Univ. Enters., Inc. v. Am. Cas. Co.*, 314 F. Supp. 2d 1094, 1101-02 (D. Kan. 2004) ("[T]he recipient of the facsimile necessarily experiences temporary loss of use of the machine . . ."); *Univ. Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 300 F. Supp. 2d 888, 895 (E.D. Mo. 2004) (finding that sending unsolicited fax messages represented the "assertion of control over the facsimile paper, ink and machine, without regard to ownership of the fax machine."). As such, the claims advanced in the Underlying Actions clearly fall within the "Property Damage" clause of the Policies, and Papa John's is entitled to coverage.

Kentucky's principles of insurance contract interpretation require this Court to give the Policies' terms their plain and ordinary meaning and to resolve any ambiguities according to the reasonable expectations of the insured. *Bidwell,* 367 S.W.3d at 589. Nor can Plaintiffs, after the fact, attempt to limit the terms they chose to use in the Policies. *Wolford*, 662 S.W.2d at 838 ("Clearly the policy was drafted in all details by the insurance company. Consequently, the company must be held strictly accountable for the terms of the contract.") (citation omitted). "Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Kemper Nat'l Ins. Co. v. Heaven Hill Distilleries, Inc.*, 82 S.W. 3d 869, 873 (Ky. 2002). Kentucky law presumes that Plaintiffs, as sole drafters of this "contract of adhesion,"

meant what they said.  *Simon v. Cont'l Ins. Co.*, 724 S.W.2d 210, 211 (Ky. 1986); *Wolford*, 662 S.W.2d at 838.  Here, the Policies unambiguously state that "property damage" includes "[l]oss of use of tangible property that is not physically injured."  Plaintiffs cannot now rewrite the scope of the Policies they drafted because the terms do not support their litigation position.  Thus, there is no genuine issue that Papa John's is entitled to coverage on this point.

Nor can Plaintiffs avoid coverage by arguing that the alleged losses in *Agne* and *Downing* were not covered as Property Damage because they were not an "accidental occurrence," but intentional.  Kentucky law is clear that an "accidental" occurrence includes intentional conduct when it was not expected or intended *by the insured* that damage would result from that conduct.  *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 640 (Ky. 2007) (holding that the mistaken demolition of a residence was not "intended" by the insured and thus constituted an accidental occurrence even though the demolition itself was intentional).  In other words, if the alleged injury was not actually intended or expected by Papa John's, coverage must be provided even if the conduct itself was intentional and the injury foreseeable.  *Id.* at 639.

These principles were fully discussed and recognized by Kentucky's highest court in *James Graham Brown Found., Inc.,* 814 S.W.2d at 277.  That case involved whether comprehensive general liability policies purchased for several wood preserving plants provided coverage for the cleanup of environmental damage ordered by the EPA.  *Id.* at 275.  The trial court had denied coverage, holding that "there was no covered 'occurrence' because the operators of the processing plants were aware of the damage that was being incurred by the routine operations."  *Id.* at 276.  The Court of Appeals affirmed.  *Id.*

The Kentucky Supreme Court reversed and ruled for the insured, noting that "[t]he activity which produced the alleged result may be fully intended and the residual effect fully

known, but the damage itself may be completely unexpected and unintended." *Id.* at 277. Thus, while one may be vicariously liable for the intentional act of another, an insured party "cannot be denied coverage since the [the vicariously liable insured party] does not possess the requisite intent to do injury." *Id.* Accordingly, the Court reversed and remanded the matter to the trial court with instructions to "vacate the summary judgment and require the insurers to pay for defense and indemnity unless they can prove that the insured subjectively expected or intended the property damage." *Id.* at 281.[6]

Most other courts to face similar questions have agreed with the Kentucky Supreme Court. For example, in two recent coverage dispute cases from the Court of Appeals for the Eighth and Tenth Circuits that are both legally and factually analogous to the instant action, the Courts held the insureds were likewise entitled to coverage. In *Univ. Underwriters Ins. Co.*, 300 F. Supp. 2d at 890, for example, the insureds were sued for sending faxes in violation of the TCPA. One of the insureds sent the offending faxes itself, while the second contracted with a company engaged in the distributions of faxes and other advertisements. *Id.* at 892. Both insureds claimed that they did not know the advertisements would be sent to individuals or businesses that had not expressly consented to receiving the advertisements. *Id.* Like Plaintiffs here, the insurer argued, among other things, that "the transmission of unauthorized faxes [was] an 'intentional act,' which [was not] a covered occurrence under the policies." *Id.* at 893.

In squarely rejecting the insurer's argument, the *Universal Underwriters* Court noted that both insureds had denied "intentionally transmitting or authorizing anyone else to transmit

---

[6] As argued herein, Papa John's believes it is entitled to coverage as a matter of law based on the Property Damage and other provisions in the Policies. Even if the Court disagrees, then, at the very least, the *James Graham Brown* case dictates that summary judgment in favor of Plaintiffs is inappropriate pending resolution of the Underlying Actions. The *James Graham Brown* Court noted that whether the insured intended the consequence of its action is normally a claim for the jury, not the court. "The determination of whether an insured expected or intended the damage resulting in the claim is for the jury." *Id.* at 279.

unsolicited faxes," and that whether the acts complained of were actually intentional was "at best colorable." *Id.* In light of the insureds' denial of having intentionally sent the faxes, the Court held such denials created potential coverage under the policies and therefore Universal Underwriters had a duty to defend the claims. *Id.*

The same result was reached by the Court of Appeals for the Tenth Circuit in *Park Univ. Enters., Inc.,* 314 F. Supp. 2d at 1105. In that case, Park, a hauling company, was sued in a state court action for alleged violations of the TCPA. The insurer, American Casualty Company, refused to defend the claims, arguing that they were not covered under the policies because, since Park sent the unsolicited faxes, it must have intended to send them, violate the TCPA, and injure the recipient. *Id.* at 1103. In holding that the insurer owed a duty to defend, the Court held that "if Park believed, even erroneously, that it was sending a facsimile to someone who wanted such facsimile, then Park did not intend to cause damages." *Id.* at 1105. Not only did a belief that it was sending a fax to someone who had consented to its receipt negate the required intent, the Court also found that it was "an accident in and of itself" if Park had negligently sent the unsolicited advertisements. *Id.* According to the Court, because there was a possibility that American Casualty Company would ultimately have to indemnify Park (after a determination of the issues at the state court level), it owed a duty to defend Park. *Id.*

Like its counterparts in *Universal Underwriters* and *Park,* Papa John's cannot be denied coverage because it did not have the requisite intent to cause injury. *See also James Graham Brown Found., Inc.*, 814 S.W.2d at 277. Even if the franchisee defendants in the Underlying Actions had intended that the third-party companies send advertisements to customers, it does not follow that those franchisees intended to violate the TCPA. The claim that Papa John's, in its capacity as franchisor, intended to violate the TCPA is even more attenuated. Papa John's has

vehemently denied, and continues to deny, that it intentionally violated *any* federal or state statute.  Moreover, like the insured in *Park*, even assuming Papa John's somehow violated the TCPA, it could not have intended to cause damages if it believed, even erroneously, that it sent the messages to willing recipients.  *Park Univ. Enters. Inc.*, 314 F. Supp. 2d at 1105.

Finally, the *Agne* Plaintiffs specifically alleged that Papa John's acted *negligently*.  That claim of negligence, by its very terms, is an "accident" sufficient to bring the allegations within the definition of "occurrence" and require coverage for Papa John's.  *Id*; *see also*, *e.g.*, *James Graham Brown Found., Inc.*, 814 S.W.2d at 279 (where *any* allegation in a complaint creates the mere possibility of coverage, insurer must indemnify).

Because plaintiffs in the *Agne* action have not even alleged the requisite intent on the part of Papa John's to nullify coverage, and because the *Agne* plaintiffs have alleged a negligence count that is covered by the unambiguous terms of the Policies, Papa John's is entitled to overage as a matter of law under the Property Damage provision as it relates to the *Agne* action. Papa John's is entitled to coverage as a matter of law under the same provision for *both* Underlying Actions because the Policies unambiguously state that "loss of use" of property not physically damaged is covered.

### B.  The Underlying Actions Allege "Advertising Injury."

Papa John's is also entitled to coverage under the Advertising Injury provision of the Policies.  In their continuing effort to avoid such coverage, Plaintiffs argue that the TCPA claims cannot possibly be covered by the Policies because violations of the TCPA fall outside the Policies' "advertising injury" coverage.  According to Plaintiffs', for there to be "advertising injury" under the Policies, there must be "publication" of material that violates a right to privacy limited to secrecy interests.  Plaintiffs argue that because the TCPA triggers a right to seclusion privacy, or the right to be left alone, coverage is somehow not available.

Plaintiffs argument, however, does not reflect the law.  In making their argument against coverage, Plaintiff's rely prominently on *American States Insurance Co. v. Capital Associates,* 392 F.3d 939 (7th Cir. 2004), a case from the Seventh Circuit – the sole jurisdiction from which Plaintiffs cite authority in support of their position.  The majority of circuit and district courts to have considered the question at issue in *American States*, however, have rejected the Seventh Circuit's position.[7]  In *Owners Insurance Co. v. European Auto Works, Inc.*, 695 F.3d 814 (8th Cir. 2012), for example, the Court was asked to determine whether an "advertising injury" provision, which required publication of material that violated a person's right of privacy, as here, covered the sending of unsolicited fax advertisements in violation of the TCPA. *Id.* at 818. In holding that it does, the Eighth Circuit noted that the policies were silent on the meaning of the terms "publication" and "right of privacy."  *Id.* at 819.  Because Minnesota law (which is in complete accord with Kentucky law) requires that unambiguous words be given their "plain and ordinary meaning," the Court concluded that the term "'right of privacy' easily includes violations of the type of privacy interest protected by the TCPA."  *Id.*  In addition, the plain meaning of the term "publication" was certainly broad enough to include the sending of fax advertisements.  *Id.* at 820.

Similarly, in *Park University Enterprises*, the Tenth Circuit, applying Kansas law, affirmed partial judgment on the pleadings in favor of the insured after the insurer had claimed it had no duty to defend because the TCPA claim fell outside the policy's "advertising injury" coverage.  314 F. Supp. 2d at 1106.  The Court rejected the insurer's belated efforts to limit the scope of terms like "publication" and "right of privacy" to exclude the coverage for violations of

---

[7] Significantly, the Court in *American States Insurance Co. v. Capital Associates*, 392 F.3d 939 (7th Cir. 2004), was attempting to predict how Illinois law would determine the issue of whether there was a duty to defend a TCPA suit under an advertising injury provision.  The Illinois Supreme Court subsequently decided Illinois law to the contrary and held that such a provision covers TCPA violations.  *See Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 323 (Ill. 2006).

the TCPA, holding that if the insurer had wanted to limit the scope of such terms, it should have so stated in the policy. *Id.* at 1107-08. "Because [the insurer] did not, the interpretation of a reasonable person in the position of the insured prevails." *Id.* at 1109.

The same result was reached yet again in *Penzer v. Transportation Insurance Co.*, 29 So.3d 1000, 1007 (Fla. 2010), where the Florida Supreme Court held that an advertising injury arising out of the "[o]ral or written publication of material that violates a person's right of privacy" includes the right to be left alone. The insurance company in *Penzer* argued that the phrase provided coverage only for "injuries to privacy rights caused by the content of the material." *Id.* at 1003. Additionally, like Plaintiffs here, the *Penzer* insurer argued that coverage only existed under the policy when information about one person was communicated to another. *Id.* Because, as in the Policies here, "right of privacy" was not defined in the insurance policy at issue, the Court sought to apply the "plain meaning" of the phrase "right of privacy," which the Court described as "the legal claim one may make for privacy, which is to be gleaned from Federal or [State] law, rather than defined by a dictionary." *Id.* at 1006. In squarely rejecting the insurer's arguments, the Court held that "right to privacy" included the right to be left alone, or seclusion privacy, and therefore covers violations of the TCPA. *Id.* at 1006-07. For examples of other courts which have found a duty to defend or indemnify for violations of privacy rights protected by the TCPA, *see, e.g., Motorists Mut. Ins. Co. v. Dandy-Jim, Inc.*, 912 N.E.2d 659, 665 (Ohio Ct. App. 2009), *W. Rim Inv. Advisors, Inc. v. Gulf Ins. Co.,* 96 F. App'x 960 (5th Cir. 2004) (unpublished), *aff'g,* 269 F.Supp. 2d 836 (N.D. Tex. 2003); *Hooters of Augusta, Inc. v. Am. Global Ins. Co.,* 157 F. App'x 201 (11th Cir. 2005) (unpublished).

Plaintiffs ignore every one of these cases. They cannot distinguish them, they have no answer to these holdings, and so in their memorandum they simply pretend that an entire body of directly on point adverse legal authority does not exist.

Even more compelling, however, is the fact that Kentucky's definition of "right to privacy" lines up with the vast majority of other jurisdictions that have considered the issue. Kentucky has long held that the right of privacy includes "the right to live one's life in seclusion, without being subjected to unwarranted and undesired publicity. In short, it is the right to be let alone." *See, e.g. Rhodes v. Graham*, 238 Ky. 225, 228 (Ky. 1931) (citation omitted). Additionally, Kentucky has adopted the *Restatement (Second) of Torts § 652A* which defines an invasion of the right of privacy to include: (1) *unreasonable intrusion upon the seclusion of another*; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; and (4) publicity that unreasonably places the other in a false light. *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981).

As was the case with the terms of the Property Damage provision, Kentucky law requires this Court to give the terms of the Advertising Injury provision their plain and ordinary meaning and to resolve ambiguities according to the reasonable expectations of the insured, *Bidwell*, 367 S.W.3d at 589, and Plaintiffs must be held "strictly accountable" for the terms of the Policies. *Wolford*, 662 S.W.2d at 838. Here, the phrase "right to privacy," as used in the Policies, is unambiguous and plainly includes the right to seclusion privacy. Accordingly, the alleged violations of the *Agne* and *Downing* plaintiffs' right of seclusion privacy constitute "advertising injuries" under the terms of the Policies, and Papa John's is entitled to coverage as a matter of law.

III.   **THE STATUTORY CLAIM EXCLUSION CANNOT BAR COVERAGE BECAUSE ITS APPLICATION AGAINST PAPA JOHN'S VIOLATES KENTUCKY LAW AND PUBLIC POLICY.**

Finally, the Statutory Claim Exclusion is unenforceable against Papa John's as a matter of law.  Plaintiffs argue that even if the "Property Damage" and "Advertising Injury" provisions apply, the Statutory Claim Exclusion for "Violation of Statutes in Connection with Sending, Transmitting or Communicating Any Material or Information" operates to deny coverage to Papa John's for alleged violations of the TCPA.  In making their arguments, however, Plaintiffs fail to mention that the Statutory Claim Exclusion's language is so broad so as to apply to *any* claim that anyone – whether acting with or without Papa John's knowledge and whether or not such person is remotely connected to Papa John's or acting on its behalf – violated *any* federal, state or local government statute, ordinance or regulation that applies to "sending, transmitting, or communicating" material or information by any means whatsoever.  In other words, the language is so broad that it renders Papa John's coverage under the Policies illusory.  Similarly, the Statutory Claim Exclusion is ambiguous because the Policies do not define or identify any of its operative terms.  As such, the Court cannot give legal effect to the Statutory Claim Exclusion and should sever it from the Policies at issue.

A.  **The Statutory Claim Exclusion Is Unenforceable Because It Renders Coverage Under The Policies Illusory.**

No reasonable layperson could expect that insurance coverage for which he paid would be void when a party, other than the insured, does *anything* to violate "*any* statute, ordinance or regulation of *any* federal, state or local government . . . that includes, addresses or applies to the sending, transmitting or communicated of *any* material or information, *by any means* whatsoever."  Yet, the language of the Statutory Claim Exclusion in this case is so broad that it actually precludes coverage if a third party, without any association with Papa John's, somehow

implicates Papa John's while causing a loss by sending or communicating information in violation of any statute, ordinance, or regulation *anywhere*.  No reasonable layperson would expect to be excluded from coverage under his commercial liability policy when *the insured himself took no part in the prohibited actions and was himself the victim of a crime or fraud,* or someone else's negligence.  This is the essence of illusory coverage.  *See Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 128 (Ky. Ct. App.  2012) ("The doctrine of illusory coverage . . . 'rests on the principle that the insurer's argument "proves too much." The language, if interpreted as proffered by the insurer, essentially denies the insured most if not all of a promised benefit.'"). Indeed, Kentucky's Supreme Court has found that such overly broad exclusions are "against the public good" as they "deny injured persons the ability to rely upon the insurance coverage purchased by the policyholder."  *Lewis v. W. Am. Ins. Co.*, 927 S.W.2d 829, 836 (Ky. 1996).

The Statutory Claim Exclusion is just such a provision.  On the one hand, coverage is afforded to Papa John's under the "Property Damage" and "Advertising Injury" provisions of the Policies, and then taken away by an overly broad Statutory Claim Exclusion, which effectively denies coverage for virtually any purported violation of any state or federal statute, regulation or ordinance, regardless of whether Papa John's itself or anyone acting on its behalf or with its authority violated any such statute, regulation or ordinance.  Indeed, the Statutory Claim Exclusion bars any coverage under the Policies, even if the allegations made against Papa John's are patently false and untrue, or amount to frivolous "shakedown" lawsuits from which commercial general liability Policies are meant to provide protection.  The following examples illustrate why the Statutory Claim Exclusion renders coverage under the Policies illusory and unenforceable under Kentucky law:

- An identity thief sends text messages in the name of Papa John's – a fraud easily accomplished with today's technology – to unsuspecting customers claiming that

Papa John's networks were hacked, and asks the customers to verify the credit card number they last used to order from the restaurants so that Papa John's can stop any illegal transactions. The unsuspecting customers give the thief their information, which he uses to go on shopping sprees across the globe. The customers sue Papa John's for their losses. In this scenario, the Statutory Claim Exclusion would void all coverage under the Policies even though Papa John's had no involvement in the actions that caused the losses.

- A business competitor seeks to sabotage Papa John's business by sending unsolicited text messages in the name of Papa John's in violation of the TCPA. The customers sue Papa John's, alleging violations of the TCPA. In this scenario, the Statutory Claim Exclusion would void all coverage under the Policies.

- A Papa John's franchisee sells a pizza oven to a third party with a written warranty without Papa John's knowledge. When the pizza oven fails, Papa John's is sued on the warranty claim under the Kentucky Uniform Commercial Code. Papa John's would have no coverage pursuant to the terms of the Statutory Claim Exclusion.

- A third party sells coupon books to the public for free products, including Papa John's, without Papa John's consent or knowledge. Papa John's refuses to honor the coupons and is sued by the customers for violations of the Kentucky Consumer Protection Act. In this scenario, the Statutory Claim Exclusion would void all coverage under the Policies.

The scenarios outlined above are just a few examples of ways that selective pleading by plaintiffs or outright fraud by third parties could intentionally negate Papa John's liability coverage and severely limit its litigation and settlement strategies and options in any given case or cases. Contrary to Plaintiffs' position, the purpose of a commercial general liability policy simply cannot be to proactively prejudice the insured, or to render the insured *more* vulnerable for having obtained the policy in the first instance. Yet the Statutory Claim Exclusion creates precisely that absurd result for Papa John's.

Indeed, Plaintiffs actually advocate this absurdly broad interpretation of the Statutory Claim Exclusion. *See* Motion at 20-21 (citing *Oregon Mut. Ins. Co. v. Rain City Pizza, LLC,* No. 67471-4-I, 2013 Wash. App. LEXIS 46, *8 (Wash. Ct. App. Jan. 14, 2013) ("The policy language states 'any' act or omission and therefore *does not limit the acts to those of a particular*

21

*actor; rather, it applies to any acts that violate the statutes, which would include those committed by someone other than the insured*.") (emphasis added).  Essentially, Plaintiffs argue that no matter what the facts are, the Statutory Claim Exclusion precludes coverage even if it turns out that every allegation in a given complaint is meritless or if it *is not even alleged* that Papa John's did anything to violate any statute or was aware of any violation in its name.  That simply is not the law in Kentucky.

If Plaintiffs intended the Statutory Claim Exclusion to bar coverage for violations of the TCPA, it would "not have been difficult for the insurers to make such an intention clear by writing the policies specifically to exclude TCPA violations."  *Owners Ins. Co.*, 695 F.3d at 822. Since the Statutory Claim Exclusion covers an unlimited array of potential claims that are in no way related to Papa John's actual conduct, it renders the coverage Papa John's paid for and expected illusory.  The proper remedy in such circumstances is to sever the offending Statutory Claim Exclusion from the policy.  *Lewis*, 927 S.W.2d at 836 ("[W]e hold the offending clause is separable from the remaining contractual provisions and the balance of the insurance contract is enforceable.").  Accordingly, Papa John's is entitled to judgment as a matter of law because the Statutory Claim Exclusion should not even be considered, as a matter of Kentucky law, in determining whether Papa John's has coverage under the Policies.

### B.  The Statutory Claim Exclusion Is Also Unenforceable Because It Is Ambiguous And Renders The Policies Self-Contradictory.

Kentucky law is clear that where "the language of the insurance contract is ambiguous or self-contradictory "exclusions are to be strictly construed so as to render coverage effective," and "[a]ny doubt as to the coverage or terms of a policy should be resolved in favor of the insured." *Secura Ins. Co. v. Gorsick*, No. 3:06CV-596R, 2008 U.S. Dist. LEXIS 8869, *11 (W.D. Ky. Feb. 5, 2008).  (internal citations omitted).  Just last year, the Kentucky Supreme Court severed an

ambiguous exclusion from an insurance policy in order to give effect to the insured's reasonable expectations of her coverage. *Bidwell*, 367 S.W.3d at 592. In that case, the plaintiff was seriously injured in a car accident. The declarations page of the applicable car insurance policy limited the insurer's liability for bodily injury to $250,000 per person. *Id.* at 586. The insured submitted a claim for the full $250,000, and the insurance company responded that her claim was limited to $25,000, the statutory minimum, pursuant to the insurer's permissive user step-down provision located elsewhere in the policy. *Id.* The insured challenged the claim limitation, arguing that the step-down provision contained in the policy created an ambiguity that rendered it unenforceable.

In holding in favor of the insured, the Supreme Court, in applying the "doctrine of reasonable expectations," held that only "an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation." *Id.* at 589. The *Bidwell* Court held that the step-down provision was ambiguous because it limited coverage to an indeterminate figure and used limited and confusing terminology to do so. *Id.* at 590. According to the Court, the exclusion referred to unspecified laws of other states and was "anything *but* 'clearly stated in order to apprise the insured of such limitations.'" *Id.* at 591 (emphasis in original) (citation omitted). Accordingly, the *Bidwell* Court held that the declarations page created a reasonable expectation of the policy limits, and the step-down provision was not sufficiently plain or clear so as to defeat that reasonable expectation. *Id.* at 592.

Like the step-down provision in *Bidwell*, the Statutory Claim Exclusion in this case is ambiguous, especially when its terms are considered alongside Papa John's reasonable expectations. *See True*, 99 S.W.3d at 443; *compare Pryor v. Colony Ins.*, No. 2012-CA-000227-

23

MR, 2013 Ky. App. LEXIS 23 (Ky. Ct. App. Feb. 1, 2013) (holding that an exclusion was not ambiguous when the exclusion specifically defined the individuals and situations to which it applied); *Nationwide Mut. Fire Ins. Co. v. James*, No. 09-40-EBA, 2011 U.S. Dist. LEXIS 10802, *6-7 (E.D. Ky. Feb. 3, 2011) (holding that an exclusion clause was unambiguous when it specified the standard for determining whether the insured's act was intentional); *and Emp'rs Ins. of Wausau v. Martinez*, 54 S.W.3d 142, 143-44 (Ky. 2001)(affirming the trial court's determination that coverage was excluded when the exclusion specified the intent necessary and the insureds had stipulated that their conduct willfully violated a statute).  Here, the Policies provide that Plaintiffs will indemnify Papa John's under the Property Damage and Advertising Injury provisions, so long as the alleged injuries fall within the Policies' terms.  The Statutory Claim Exclusion, on the other hand, takes that coverage away, despite the fact that it fails to define the operative terms, including the individuals and situations to which it applies, provides no standards for determining whether Papa John's acts were intentional or even that Papa John's itself acted, and fails to specify, identify, or define the statutes to which it would apply.

Moreover, even if Plaintiffs could overcome the ambiguities of the Statutory Claim Exclusion itself, the Statutory Claim Exclusion renders the Policies self-contradictory, such that the Statutory Claim Exclusion is unenforceable as a matter of law for that reason as well.  *See, e.g.*, *Secura Ins. Co.*, 2008 U.S. Dist. LEXIS 8869.  In *Secura*, the insurer moved for summary judgment based on an exclusion which voided coverage for "personal and advertising injury" resulting from malicious prosecution committed by the insured with knowledge that the act in question would violate the rights of another.  *Id.* at *12.  A separate coverage provision of the policy, however, expressly *provided* coverage for the same "personal and advertising injury" committed with the same level of intent – knowing violation of another's rights – on the part of

24

the insured.  *Id.* at *13-14.  The *Secura* Court found the policy "self-contradictory" because "in one provision the policy specifically provides coverage for [the injury in question] but in another provision excludes such coverage."  *Id.*  Having found the language of the policy self-contradictory, the *Secura* Court was required to construe the exclusions narrowly so as to render the insurance effective, resolving any doubt as to the coverage or terms in favor of the insured. *Id.* at *14 (citation omitted).  According to the Court, "[a]ny other reading of the policy would render the coverage . . . illusory."  *Id.*

This Court should reach the same result.  Here, as in *Secura Ins. Co.*, the "Property Damage" provision of the Policies specifically provides that coverage applies if, among other things, the property damage in question is caused by an "occurrence," further defined in the Policies as an "accident."  In other words, Papa John's is entitled to coverage, so long as Papa John's does not act (or deliberately direct others to act) with the expectation or intent to cause damages.  The Statutory Claim Exclusion, however, excludes coverage for the very same damages regardless of Papa John's intent (including no intent at all on the part of Papa John's) and regardless of whether Papa John's, or someone else, takes or directs any action resulting in damages.  Thus, while one provision of the Policies specifically provides coverage, the Statutory Claim Exclusion excludes such coverage, rendering the Policies self-contradictory and therefore ambiguous.  As such, the Court must construe the Statutory Claim Exclusion narrowly so as to afford coverage and to resolve any doubts in favor of Papa John's.

Based on the above, the Statutory Claim Exclusion is either unenforceable in its entirety and therefore severable, or ambiguous and therefore to be construed narrowly in favor of

coverage as a matter of law.  In either case, the Statutory Claim Exclusion cannot be applied against Papa John's to deny coverage.[8]

## **CONCLUSION**

For the aforementioned reasons, Papa John's respectfully requests that the Court grant Papa John's Cross-Motion for Summary Judgment or, alternatively, deny Plaintiffs' motion for summary judgment and stay these proceedings, pending a resolution of the Underlying Actions.

Alternative Orders to this effect are tendered herewith.

Respectfully submitted,

*/s/ Janet P. Jakubowicz* _____
Janet P. Jakubowicz
W. Scott Croft
BINGHAM GREENEBAUM DOLL LLP
3500 National City Tower
101 S. Fifth Street
Louisville, KY. 40202
502.589.4200
Jjakubowicz@bgdlegal.com
wcroft@bgdlegal.com

COUNSEL FOR DEFENDANTS
PAPA JOHN'S INTERNATIONAL, INC.
PAPA JOHN'S USA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Janet P. Jakubowicz*
COUNSEL FOR DEFENDANTS

---

[8] Again, to the extent the Court disagrees with Papa John's and believes that ambiguities in the Policies create a genuine issue of material fact in this case, the above analysis means, at the very least, that Plaintiffs' motion for summary judgment based on the application of the Statutory Claim Exclusion *against* Papa John's must be rejected, and the litigation should be stayed for the reasons stated in Papa John's Reply Brief.

14397556_5.docx